UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SABRINA WILLIAMS | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| VS. | § | Civ. Action No. 4:09-cv-3450 |
| | § | |
| WACKENHUT CORPORATION | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM & ORDER**

Before the Court is Defendant Wackenhut Corporation's ("Defendant" or

"Wackenhut") Motion for Summary Judgment (Doc. No. 23), Defendant's Motion to

Exclude Robert Rose as an Expert (Doc. No. 21), and Defendant's Objections to

Plaintiff's Summary Judgment Evidence (Doc. No. 29). After considering the Motions,

all responses and replies, and the applicable law, the Court concludes that Defendant's

Motion for Summary Judgment must be **GRANTED**, and Defendant's Motion to

Exclude an Expert and Objections to Plaintiff's Summary Judgment Evidence are

**DENIED** as moot.

**I. FACTS[1]**

Plaintiff Sabrina Williams ("Plaintiff" or "Williams"), an African-American

woman, alleges that she was discriminated against because of her race, in violation of

Title VII and 42 U.S.C. § 1981, and was constructively discharged by Wackenhut.

Williams worked for Wackenhut in an administrative and managerial office position

between 2000 and 2009. (Doc. No. 25-2, at 12, and Chad Starwalt Dep. 22:19-23:4,

61:24-25, March 28, 2013.) Wackenhut, now known as G4S Secure Solutions USA, Inc.,

---

[1] The facts are undisputed, except where noted.

1

provides security services to various private and governmental operations. (Doc. No. 24-1, ¶ 2.)

Williams was first hired as a receptionist in the Denver office. (Sabrina Williams Dep. 12:112-113; March 29, 2013.) She eventually transferred to payroll, and worked with the PeopleSoft software program to execute several of her job duties. (Williams Dep. 115:11-45.) Williams received on-the-job training on PeopleSoft, but did not receive formal, classroom training on PeopleSoft. (*Id.*) While at the Denver office, Williams' supervisor, Robert Bobo, documented several issues with Williams' performance. In 2001, Williams received a performance evaluation which noted that she "was not fully dependable." (Williams Dep. 211:3-212:17.) In 2004, Robert Bobo gave her an evaluation, again noting that she was "not fully dependable" and "does not fully meet requirements present job," including focusing on the payroll function and taking constructive criticism. (Williams Dep. 212:23-213:22.)

In 2006, Williams voluntarily transferred to Wackenhut's Houston office for personal reasons. (Williams Dep. 121:12-14.) She continued to use PeopleSoft for the next two years. (Williams Dep. 165:6-9.) In December of 2008, Chad Starwalt took over as the general manager of the Houston office. (Doc. No. 24-1, ¶ 2.) Upon his arrival at the Houston office, Starwalt implemented organizational and procedural changes to streamline the operations of the office. (*Id.* ¶ 3; Williams Dep. 177:17-23.) Part of these changes involved eliminating some positions and reallocating job responsibilities. *Id.*

Between December 2008 and early 2009, Williams alleges that Starwalt gave her additional job responsibilities that she did not have prior to his arrival. (Williams Dep. 165:10-18.) Some of these additional duties involved procedures in PeopleSoft regarding

ordering uniforms and inputting codes for invoices. (*Id.*) Williams testified that she was happy to take on these additional duties, but felt like she needed to go to the company's headquarters in Florida to train on PeopleSoft. (Williams Dep. 164:10-167:7.) Starwalt assumed that, because she had worked with PeopleSoft, she had sufficient training to continue. (Starwalt Dep. 101:3-19.) Williams alleges that Wackenhut knew she was not trained in PeopleSoft. (Doc. No. 25-5.) Starwalt directed Williams to the online tutorials that were available to brush up on her skills, but Williams did not do any of the online tutorials after Starwalt became manager of the Houston office. (Williams Dep. 170:3-11.)

Wackenhut alleges that Williams continued to underperform in her job, and that Starwalt had to field complaints from other employees and vendors regarding mistakes she would make. (Doc. No. 24-1, ¶ 4.) For example, there were instances where Williams made mistakes on the pay checks, placed uniform orders with the wrong vendor, and ordered the incorrect inventory. (*Id.* ¶¶ 3, 4.) Williams disputes that these performance issues were her fault. (Doc. No. 35.)

In June 2009, Williams' position was eliminated and her duties were given to other employees. The employees that absorbed Williams' former tasks included Sharon Williams in payroll (African-American), and operations managers, including Steve Higgenbotham (African-American) and James Moore (African-American).[2] (Doc. No. 24-1, ¶ 3; Williams Dep. 133:8-16.)  The parties disagree whether Anetta Dudek-Rayburn (Caucasian) and Susan Cantu (Hispanic) replaced Williams, or simply absorbed some of her tasks. According to Wackenhut, Dudek-Rayburn was hired for an entirely new

---

[2] While Plaintiff explicitly agreed that Sharon Williams took on some of her job responsibilities, the Court notes that Plaintiff did not explicitly refute Defendant's claim regarding the operations managers. Therefore, the Court assumes Plaintiff agrees that the operations managers, including those who are African-American, took on some of her job responsibilities.

management position, but took on some of Williams' responsibilities. (Doc. No. 24-1, ¶ 3; Stalwart Dep. 14:21-15:4.) Similarly, Cantu was brought in to do payroll for the City of Houston. (Starwalt Dep. 57:11-16.)  In contrast, Williams alleges that Dudek-Rayburn and Cantu were hired and trained to replace her. (Doc. No. 25, at 10; Starwalt Dep. 57:11-16; 62:1-4.)

Starwalt provided Williams a memorandum pointing out errors he observed and complaints he received, and offering her the option to be assigned to the security officer position, since her position had been eliminated. (Doc. No. 24-1, ¶ 8; Doc. No. 24-7; Williams Dep. 226:9-20.) The security officer position would have paid approximately $10 per hour, a reduction from the $17 per hour she earned previously. (Starwalt Dep. 29:10-21; 134:8-135:22.) Additionally, Williams would have to work graveyard shifts, and could not have taken care of her daughter and worked. (Williams Dep. 38:4-6.) On July 13, 2009 Williams informed Starwalt that the offer to make $10 an hour was "just a way to disregard [her]." (Williams Dep. 226:21-227:4.) After not receiving further communications from Williams, the company assumed she did not want to take the security officer position, and terminated her employment.

Following her demotion and termination, Williams alleges that she started to research and apply for jobs. (Williams Dep. 61:25-62:9; 63:4-6; 64:22-24.) Williams states that she did not turn down jobs offers, and even commuted from Katy, Texas to Dallas, Texas for a temporary contract position. (Williams Dep. 71:12-25, 87:1-88:18.) At first, Williams was unable to secure employment, so she volunteered at a company owned by her friend. (Williams Dep. 99:15-100:9, 102:16-18.) After being unemployed for several months, Williams was able to secure alternative employment, though she

alleges it was not substantially equivalent to her former position at Wackenhut. (Doc. No. 25, at 7.)

## II. LEGAL STANDARD

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact in the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

The summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986).

## III. ANALYSIS

Williams contends that she was discriminated against and ultimately reassigned to another position because of her race. Williams does not have direct evidence that the decision makers were motivated by race. Therefore, her circumstantial case must be

analyzed under the burden-shifting framework set forth in *McDonnell Douglas*. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Reeves v. Sanderson Plumbing*

*Products, Inc*., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Under this

framework, Williams must first establish a *prima facie* case of race discrimination.  *Id.*

After the plaintiff meets her *prima facie* burden, a rebuttable presumption of

discrimination arises, and the burden shifts to the respondent to rebut the presumption by

articulating a legitimate, nondiscriminatory reason for taking adverse action against the

plaintiff. *Id.* Once the respondent has advanced a nondiscriminatory reason, the

presumption disappears, and the claimant bears the burden of demonstrating that the

respondent's proffered reason is merely a pretext for intentional discrimination. *Id.*

To establish a *prima facie* case of race discrimination, Williams must prove that

she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was

subject to an adverse employment action; and (4) was replaced by someone outside the

protected class," or, in the case of disparate treatment, shows "that others similarly

situated were treated more favorably." *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*,

245 F.3d 507, 512-13 (5th Cir. 2001).

Wackenhut does not contest that Williams was of a protected class, was qualified

for her position, and was subject to an adverse employment action. Rather, Wackenhut

argues that Williams cannot establish a *prima facie* case because her job position was

eliminated, and her job responsibilities were absorbed by other employees. However, the

Fifth Circuit has held that even if job duties are absorbed by existing employees, rather

than by a newly-hired employee, a plaintiff may still meet the fourth prong of her *prima*

*facie* case. *Howard v. United Parcel Serv., Inc*., 447 F. App'x 626, 629 (5th Cir. 2011)

6

*citing Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 149–50 (5th Cir.1995). In

cases where "only one position [is] eliminated and the duties of that person [are] simply

absorbed by the other employees[,] . . . the fourth prong of the prima facie case is met by

showing simply that the plaintiff was 'constructively replaced,' in other words that his

responsibilities were absorbed by employees not in the protected class. *Trejo v. Cingular*

*Wireless, LLC*, CIV B-05-094, 2007 WL 1189643 (S.D. Tex. Apr. 19, 2007) *citing Ritter*

*v. Hill 'N Dale Farm, Inc.,* 231 F.3d 1039, 1043 (7th Cir.2000).

      The Court views the facts in a light most favorable to plaintiff.  *Baton Rouge*

*Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc*., 804 F.2d 879, 881 (5th

Cir.1986) (per curiam) (in reviewing a summary judgment, we must review the evidence

and any inferences to be drawn therefrom in a light most favorable to the non-moving

party). However, even taking the Plaintiff's facts as true, Plaintiff admits that some of her

job duties were absorbed by individuals who were in her protected class, such as Sharon

Williams.  Plaintiff does not dispute that some of the payroll functions were also

distributed among the operations managers, who included two African-American

employees.

      The question is whether the fourth prong is satisfied when some, but not all, of the

employees that absorbed Plaintiff's tasks were not in her protected class. While the

question appears to be one of first impression in the Fifth Circuit, the Seventh Circuit has

held that it is sufficient for the plaintiff to show that her duties were absorbed *mostly* by

employees not in her protected class. *Bellaver v. Quanex Corp*., 200 F.3d 485, 494-95

(7th Cir. 2000);  *Knowles v. Trans Union LLC*, 03 C 4952, 2005 WL 3159363 (N.D. Ill.

Nov. 21, 2005) *Kazhinsky v. Meyer & Sons, Inc.,* No 02 C 7254, 2003 WL 22735867, at

*5 (N.D.Ill. Nov.19, 2003) (collecting cases and holding that, "[b]ecause half of the individuals who assumed [the plaintiff's] job duties were in the protected class, she cannot show that her duties were assumed solely or even primarily by employees outside the protected class.") Similarly, in *Knowles,* the Seventh Circuit found that the plaintiff could not establish a *prima facie* case because she did not have knowledge as to who absorbed her duties after her employment was terminated.  *Knowles*, 2005 WL 3159363, at *10.

Plaintiff admits that she does not have knowledge of who took over her duties (Williams 204:1-4). The Court does not have a complete picture of the races of the other operation managers, who may have taken over parts of Plaintiff's job. However, out of the five employees who Plaintiff does not dispute absorbed her job duties, three were African-American.[3] Based on the evidence before the Court, the employees who absorbed Plaintiff's job duties were mostly in the protected class. Thus, the Court finds that Plaintiff cannot meet the fourth prong and establish a prima facie case.

Plaintiff also alleges that she was constructively discharged when she was offered the security guard position. To prove constructive discharge, Williams must show that Wackenhut made "working conditions so intolerable that a reasonable employee would feel compelled to resign." *McCoy* v. *City of Shreveport,* 492 F.3d 551, 557 (5th Cir.

---

[3]    Plaintiff alleges that Cantu, a Hispanic, Dudek-Rayburn, a Caucasian, and Sharon Williams, an African-American absorbed some of her duties. Plaintiff likewise does not contest that the operation managers, including two African-Americans, also absorbed some of her duties.
    Courts have found that the subsequent hire of a different minority candidate does not preclude a plaintiff from establishing a *prima facie* case, and may be evidence that the employer favored other racial minorities over that of plaintiff's protected class. *See, e.g., Dang v. Inn at Foggy Bottom*, 85 F.Supp.2d 39, 46 (D.D.C.2000) (*prima facie* case was established where Vietnamese employee was replaced by someone of another racial minority); *Dancy v. American Red Cross*, 972 F.Supp. 1, 3–4 (D.D.C.1997) (*prima facie* case was established where black employee was replaced by Hispanic employee); *Dalton v. Avis Rent A Car Sys., Inc.*, 336 F. Supp. 2d 534, 538 (M.D.N.C. 2004) *aff'd*, 131 F. App'x 936 (4th Cir. 2005) (plaintiff must show that defendant favored another person outside of plaintiffs' *specific* protected class).

2007). The claim requires a "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Benningfteld v. City of Houston,* 157 F.3d 369, 378 (5th Cir. 1998). Williams does not allege any racially based comments, slurs, or harassment. Rather, Williams asserts that the security guard position was a humiliating demotion, equating to a constructive discharge.

A demotion, transfer, or cut in pay can support a constructive discharge finding. *See, e.g. Jurgens v. E.E.O.C.,* 903 F.2d 386, 391 (5th Cir. 1990), *citing Jett v. Dallas Indep. School Dist*., 798 F.2d 748 (5th Cir.1986). The Fifth Circuit has identified six factors to aid the Court's constructive discharge inquiry: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 771–72 (5th Cir.2001). Williams asserts that the first four factors of the inquiry support her constructive discharge claim. She alleges that she was reassigned to a less prestigious, more dangerous position that paid less.

Although a demotion or transfer in some instances may constitute a constructive discharge, the Court finds that Williams' demotion was not so intolerable that a reasonable person would have felt compelled to resign.  The poor treatment alleged by Williams does not reach the level required to establish a constructive discharge claim. *See Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 481 (5th Cir. 2008) *(citing Brown v. Bunge Corp.,* 207 F.3d 776, 782–83 (5th Cir.2000) (affirming grant of summary judgment even where employee was demoted and given fewer job

responsibilities); *Stephens v. C.I.T. Group/Equip. Fin., Inc.,* 955 F.2d 1023, 1027–28 (5th Cir.1992) (affirming jury verdict on constructive discharge where plaintiff had been demoted, faced significant reductions in salary and responsibilities, and was repeatedly asked when he planned to quit).

Most importantly, Williams never communicated her concerns with the security guard position—for example, conveying to Wackenhut that she needed to be home to take care of her daughter at night. (Williams Dep. 202:11-14; 203:13-22; 226:9-227:4.) Without conveying these concerns, Wackenhut did not have a chance to respond and attempt to remedy the situation.  *See Aryain*, 534 F.3d at 481 (plaintiff had no constructive discharge claim when she was left off of the schedule, and resigned just a day or two later, "giving her employer no opportunity to improve her situation.") The Fifth Circuit has articulated that "part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir.1987) (*quoting Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987)); *see Haley v. Alliance Compressor LLC,* 391 F.3d 644, 652 (5th Cir.2004) (noting that a reasonable employee often should pursue less drastic options before choosing to leave her job). Under these circumstances, Williams did not give Wackenhut a fair opportunity to remedy her concerns. Thus, even when viewing the facts in the light most favorable to Williams, the security guard position was not so intolerable as to cause a reasonable employee to feel compelled to quit. The Court finds, therefore, that Plaintiff was not constructively discharged and must grant Defendant's Summary Judgment Motion on this claim.

Finally, the Court notes that Defendant has filed a Motion to Exclude Rose as an Expert, (Doc. No. 21), and Objections to Summary Judgment Evidence filed by Plaintiff. (Doc. No. 29.) Plaintiff designated Robert Rose to testify regarding "the propriety of the manner in which Defendant handled workplace issues in this matter." (Doc. No. 21-2, at 2.) Defendant argues that Rose is not qualified to testify as an expert witness, and that his testimony is not based on any accepted methodology or data. (Doc. No. 21.) In Defendant's Objections to Plaintiff's Summary Judgment evidence, Defendant objects to paragraph 9 of Plaintiff's Response, where Plaintiff states that other African-American employees were fired around the same time that she was terminated. (Doc. No. 25, ¶ 9.) The Court did not rely upon Rose's expert report, or the fact that other African-American employees were fired, in arriving at its legal conclusions. Therefore, Defendant's Motion to Exclude and Defendant's Objections are **DENIED** as moot.

## IV. CONCLUSION

The Court **GRANTS** Defendant's Summary Judgment Motion. Defendant's Motion to Exclude and Objections to Plaintiff's Evidence are **DENIED** as moot.   The case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 6th day of August, 2013.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

11